UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
SCOTTSDALE INSURANCE COMPANY,

                Plaintiff,

      -against-

ABOVE CALL SECURITY AND INVESTIGATIONS, INC., DWAYNE CHANDLER, and JHAPETH DHARRY,

                Defendants.
------------------------------------------------------------

**MEMORANDUM & ORDER**

**21-CV-1418 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Scottsdale Insurance Company moves for a judgment on the pleadings. (Pl.'s Mot. for J. on the Pleadings ("Pl's. Mot. for J.") (Dkt. 25-1).) Defendants Above Call Security and Dwayne Chandler (collectively, "Defendants") oppose that motion and respond with a motion to stay the action. (Defs.' Opp. to J. on the Pleadings ("Defs.' Opp. to J.") (Dkt. 25-11); Defs.' Mot. to Stay (Dkt. 26-1); Pl.'s Opp. to Stay (Dkt. 26-8).)

As explained below, there are several material issues of fact in dispute related to Scottsdale's motion for judgment on the pleadings. Those issues require discovery, including testimony from Chandler—an indicted criminal defendant proceeding to trial on state charges arising from the same facts and circumstances as this action. At this stage, then, a determination as a matter of law on Scottsdale's motion would be premature. Moreover, competing interests of justice at stake favor a stay of this action, pending resolution of Chandler's criminal case. Accordingly, Scottsdale's motion for judgment on the pleadings is DENIED, and Defendants' motion to stay the action is GRANTED.

I. **BACKGROUND**

Dwayne Chandler, a former member of the New York City Police Department, is the owner, sole shareholder, and manager of Above Call Security, a security and investigation firm that provides private protection services and on-site security detail. (Compl. (Dkt. 1-1) ¶¶ 11-14; Decl. of Dwayne Chandler ("Chandler Decl.") (Dkt 26-2) ¶ 3.) Scottsdale Insurance Company issued a Commercial Package Policy (the "Primary Policy") to Above Call for the period spanning November 8, 2019, to November 8, 2020. (Compl. ¶ 33.) It also issued a Commercial Excess Liability Policy (the "Excess Policy") to Above Call for the period spanning February 27, 2020, to November 8, 2020 (collectively, the "Scottsdale Policies"). (*Id.* ¶ 34.) The Primary Policy was subject to an "Assault and/or Battery Limited Liability Coverage" provision, which capped coverage at $100,000 for an insurance event arising out of an assault or battery; the Excess Policy was subject to an "Assault and/or Battery Exclusion" provision, which excluded coverage for an insurance event arising out of an assault or battery. (Pl.'s Mot. for J. at 8-9, 12.)

On June 23, 2020, Above Call was providing overnight security detail to a client at two separate locations, one at 574 Cozine Avenue in Brooklyn, the other at 131st Street and South Conduit Avenue in Queens. (Compl. ¶ 16.) Chandler performed an inspection at the Brooklyn location, then left to do the same at the Queens location. (*Id.* ¶ 17.) While *en route* to the Queens location, Chandler and a female companion stopped at Frenasia Asian Bistro in Howard Beach for a meal. (*Id.* ¶¶ 17-18.) He was carrying a Glock 9mm handgun. (*Id.* ¶ 19.)

During the meal, another diner, Steven Kruger, approached Chandler and called him a racial slur. (*Id.* ¶ 20; Defs.' Opp. to J. at 5-6.) At some point in the fracas that followed, Kruger tried to hit Chandler with a chair. (Compl. ¶ 21; Defs.' Opp. to J. at 5-6.) What happened next is in dispute. Scottsdale contends Chandler

unholstered, pointed, and fired his gun; Chandler insists he reached for his gun and, after Kruger hit him with the chair, the gun discharged inadvertently. (Compl. ¶¶ 22-23; Defs.' Opp. to J. at 6.) However it happened, the gunshot struck a bystander, Defendant Jhapeth Dharry. (Compl. ¶ 23.)

The Queens County District Attorney subsequently investigated the incident. (*Id.* ¶¶ 24-25; Decl. of Daniel Hoffman ("Hoffman Decl.") (Dkt. 26-3) ¶ 4.) On December 22, 2020, a grand jury indicted Chandler for, *inter alia*, assault in the first degree under New York Penal Law ("N.Y.P.L.") § 120.10, and reckless endangerment in the first degree, N.Y.P.L. § 120.25. (Compl. ¶ 24; Hoffman Decl. ¶ 4.) Chandler now stands as the defendant in *People of the State of New York v. Dwayne Chandler*, Indictment No. 1017-2020. (Hoffman Decl. ¶ 4.) That case remains pending and is proceeding to trial. (*Id.* ¶ 5.)

On January 7, 2021, Mr. Dharry filed a civil lawsuit against Above Call and Chandler, among others, in New York State Supreme Court, alleging that he was injured as a result of Chandler's negligence and Above Call's failure to properly train Chandler, negligent training of Chandler, and negligent entrustment of a firearm to Chandler. (Compl. ¶¶ 26-32.) Above Call and Chandler seek coverage in that suit under the Scottsdale policies.

On March 18, 2021, Scottsdale filed a declaratory judgment action against Above Call, Chandler, and Dharry.[1] On June 7,

---

[1] Scottsdale brings seven causes of action for a declaratory judgment regarding the scope of its coverage pursuant to 28 U.S.C. § 2201: Chandler lacks insured status, because he was not engaged in duties as an executive or officer of Above Call or acting within the scope of his employment at the time of the June 23, 2020, shooting; the Assault and/or Battery Limited Liability Coverage provision limits coverage to $100,000 under the Primary Policy; the Assault and/or Battery Exclusion provision excludes coverage under the Excess Policy; Above Call and Chandler are not entitled

2021, Defendants filed their Answer and Affirmative Defenses. (*See* Answer (Dkt. 18).) On October 20, 2021, Scottsdale filed the motion for judgment on the pleadings, and Defendants filed the motion to stay the action. (Not. of Pl.'s Mot. for J. on the Pleadings (Dkt. 25); Not. of Defs.' Mot. to Stay (Dkt. 26).)

## II. DISCUSSION

Granting a stay would not change the posture of the pending motion for judgment on the pleadings. Accordingly, the court considers Scottsdale's motion and then turns to Defendants' motion to stay further proceedings in this action.

### A. Scottsdale's Motion for Judgment on the Pleadings

#### 1. Legal Standard

"The standard to evaluate a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).[2] "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *MAVL Capital, Inc. v. Marine Transp. Logistics, Inc.*, 130 F. Supp. 3d 726, 728 (E.D.N.Y. 2015).

In evaluating a motion for judgment on the pleadings, the court "accept[s] the non-moving party's allegations as true and view[s] the facts in the light most favorable to that party." *Montgomery*

---

to coverage under the "Errors & Omissions" section of the Primary Policy; Above Call and Chandler are not entitled to coverage for exemplary or punitive damages; and insofar as Dharry's injuries were not the result of an accident, Above Call and Chandler are not entitled to coverage because Dharry's injuries did not result from an "occurrence." (*See* Compl. ¶¶ 72-109.)

[2] When quoting cases, unless otherwise noted, citations and quotation marks are omitted and all alterations are adopted.

*v. Holland*, 408 F. Supp. 3d 353, 361 (S.D.N.Y. 2019). A defendant raising plausible affirmative defenses in her answer will generally bar a plaintiff's motion for judgment on the pleadings. *See Oneida Indian Nation v. Phillips*, 397 F. Supp. 3d 223, 229 (N.D.N.Y. 2019).

### 2. Application

Scottsdale moves for judgment on the pleadings on two issues. First, that the underlying action (the shooting at Frenasia Asian Bistro) constitutes an assault, thus effectively limiting the Scottsdale Policies because: (a) the Assault and/or Battery Limited Liability Coverage provision would cap coverage to $100,000 under the Primary Policy; and (b) the Assault and/or Battery Exclusion provision would exclude coverage under the Excess Policy. Second, Scottsdale moves for a judgment that Chandler was not engaged in duties as an executive or officer of Above Call or acting within the scope of his employment at the time of the shooting, thus disqualifying him as an insured under the Scottsdale Policies.

For the reasons that follow, Scottsdale's motion for judgment on the pleadings is denied on both issues, because Defendants raise plausible affirmative defenses that demonstrate sufficient material issues of fact regarding the shooting at Frenasia.

### a. Assault and/or Battery Coverage Provisions

Scottsdale's first claim relies on the premise that the underlying action constitutes an assault as a matter of law. (Pl.'s Mot. for J. at 1-2, 13.) Viewing the facts in the light most favorable to the non-moving party, however, Defendants raise a plausible defense that demonstrates a material issue of fact.

An assault under New York law is an intentional act that places another in fear of imminent or harmful contact. *See United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). Defendants contend that discovery will prove the

5

shooting at Frenasia was unintentional: Chandler reached for the gun, but the gun discharged inadvertently during the fight. (*See* Defs.' Opp. to Mot. for J. at 1, 12-14.) Therefore, the relevant assault and battery carveouts would not apply, because Chandler did not intend to pull the trigger and fire the gun.[3] (*Id.*)

Defendants' argument raises a clear dispute of a material fact that bars a determination on the pleadings that the shooting constitutes an assault as a matter of law. Specifically, did Chandler unholster his gun, point it, and pull the trigger, or did he reach for the gun, which discharged inadvertently during the fight? Additional discovery will answer these questions and clarify what happened. Accordingly, Scottsdale's motion is denied.

### b. *The Scope of Chandler's Employment*

Scottsdale's argument that Chandler was not acting within the scope of his employment at the time of the shooting is doubtless a strong claim, even at this stage in the proceedings. Notwithstanding the force of this argument, caution counsels against haste in answering this question now as a matter of law, "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the finder of fact." *Rivera v. New York*, 34 N.Y.3d 383, 390 (2019) ("Whether an employee acted within the scope of employment is a fact-based inquiry").

Courts consider five factors in analyzing whether an employee acted within the scope of employment: (1) the connection between the time, place, and occasion for the act; (2) the history of the relationship between the employer and the employee as spelled out in actual practice; (3) whether the act is one which is

---

[3] Defendants focus almost exclusively on how the gun discharged. But an assault may follow whether or not the gun went off—the intentional act need only place another in fear of imminent or harmful contact.

6

commonly done by such an employee; (4) the extent of the departure from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated. *Marley v. Ibelli*, 203 F. Supp. 2d 302, 309 (S.D.N.Y. 2001). These factors underscore the fact-intensive nature of the scope of employment analysis. Here, given the nature of Chandler's security and investigation business, and viewing the facts in the light most favorable to Chandler, it would be ill-advised to conduct this analysis without the benefit of discovery. Scottsdale and Defendants are simply too far apart on the underlying facts to answer this question as a matter of law. Accordingly, Scottsdale's motion for a judgment that Chandler is disqualified from coverage because he was not acting within the scope of his employment is denied.

### B. Defendants' Motion to Stay Proceedings

#### 1. Legal Standard

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012); *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action."). To determine whether a stay is appropriate, courts consider the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the

7

defendants; (5) the interests of the courts; and (6) the public interest.

*Louis Vuitton Malletier S.A.*, 676 F.3d at 99.

"Courts considering these factors do not automatically stay civil proceedings because a defendant has been charged criminally, but will do so where the interests of justice seem to require such action." *Fed. Ins. Co. v. Weinstein*, No. 18-CV-2526 (PAC), 2019 WL 1407455, at *3 (S.D.N.Y. Mar. 28, 2019). That said, concerns about potential prejudice and a defendant's Fifth Amendment protection against self-incrimination warrant extra consideration. *See Louis Vuitton Malletier S.A.*, 676 F.3d at 97-99; *see also Parker v. Dawson*, No. 06-CV-6191 (JFB) (WDW), 2007 WL 2462677, at *3 (E.D.N.Y. Aug. 27, 2007) ("[D]istrict courts in this Circuit generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted."); *In re Par Pharmaceutical*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment, . . . but will deny a stay of the civil proceeding where no indictment has issued.").

    2.   Application

Using these factors as a guide, the court concludes that this action should be stayed pending resolution of the criminal case against Chandler. The "strongest argument for granting a stay" is where, as here, a civil party "is under criminal indictment" and simultaneously proceeding to trial on those charges. *See Hicks v. City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003); *see also Parker*, 2007 WL 2462677, at *4-5. The strength of this argument increases where, as here, the underlying issues in the criminal case directly overlap with those in the civil action. *See Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). Chandler is charged,

*inter alia*, with first-degree assault and first-degree reckless endangerment. Assault requires that Chandler acted with intent, N.Y.P.L. § 120.10(1); reckless endangerment requires that he acted with a depraved indifference to human life and acted recklessly, N.Y.P.L. § 120.25. At issue in both the criminal case and this action is Chandler's intent.

As to whether Chandler qualifies as an insured under the Scottsdale Policies, Scottsdale rightly argues that whether Chandler was acting in the scope of his employment at the time of the shooting is not at issue in his criminal case. (Pl.'s Opp. to Stay at 6.) Despite this distinction, an examination of the various interests at stake makes plain that a stay is warranted for both questions of whether the shooting constitutes an assault and whether Chandler acted within the scope of his employment.

Scottsdale identifies no interest in immediately continuing this motion. Thus, Scottsdale identifies no interest that would outweigh Chandler's interests in preserving his Fifth Amendment right. *See Parker*, 2007 WL 2462677 at *5 ("The Court recognizes that a stay will result in inconvenience and delay to plaintiffs. But under settled authority the Fifth Amendment is the more important consideration."). In addition, interests in judicial efficiency decidedly support a stay of this action. Even if Scottsdale identified a comparatively persuasive interest in proceeding with limited discovery on the scope of employment issue, it would make little practical sense to do so now, particularly when the question of Chandler's intent would be stayed. Such piecemeal discovery would undermine judicial efficiency. Justice is better served by staying this proceeding until discovery can resume, free from the Fifth Amendment concerns attending Chandler's criminal case. Moreover, given the overlap of issues, the criminal case may ultimately further the court's interest in the efficient disposition of this case. *See id.* at *6.

Accordingly, the court finds that, under the circumstances of this case, the interests at stake favor a stay of this action pending resolution of the criminal action against Chandler.

### III. CONCLUSION

For the reasons explained above, Scottsdale's (Dkt. 25) Motion for Judgment on the Pleadings is DENIED, and Defendants' (Dkt. 26) Motion to Stay the Action is GRANTED.

SO ORDERED.

Dated:   Brooklyn, New York
         January 13, 2022

                                    /s/ Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge